***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Chapman with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant.
 3. The named employer is self-insured. *Page 2 
4. The employee's average weekly wage is $198.77.
5. The employee sustained an injury on or about February 8, 2004.
6. Plaintiff's injury arose out of and in the course of employment and is compensable.
7. The parties agree that the plaintiff sustained an injury by accident on February 8, 2004 during the course and scope of her employment with defendant. However, the parties disagree as to the extent and nature of the plaintiff's injuries.
8. In addition, the parties stipulated into evidence the following:
 a. Package of medical records and reports.
 b. Packet of Industrial Commission forms and filings.
 c. Packet of miscellaneous documents, which included discovery responses, Social Security filings, case management reports, job descriptions and correspondence.
 d. Copy of a page from Ms. Stark's black book which was submitted February 23, 2007.
9. The Pre-Trial Agreement dated December 6, 2006, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who is fifty-four years old and who has a GED with additional courses in tax return preparation, has worked in different positions and locations for defendant for *Page 3 
approximately 14 years. Plaintiff's most recent period of employment with defendant began on December 1, 2002 at the Waffle House restaurant in Leland as a cook two days per week and as a waitress the other days.
2. On February 8, 2004, plaintiff sustained a compensable injury by accident. As she was putting dishes in the sink at work, she slipped on water in such a manner that her legs went under the sink. Although she grabbed the sink to catch herself, she fell to the floor, landing on her buttocks. Plaintiff was embarrassed that she had fallen. She got up and told the restaurant manager, Anna Marie Stark, that she thought she would be all right, and she resumed her work duties.
3. Prior to the fall at work, plaintiff had been treated for chronic back pain. Dr. Brown, a neurosurgeon, had treated plaintiff in 1997 for low back and bilateral leg pain. He had ordered an MRI, which revealed severe degenerative disc space narrowing at L5-S1, with either an asymmetric disc bulge or a bone spur that was touching the S1 nerve root. After reviewing the films, Dr. Brown did not believe that the disc was causing plaintiff's symptoms, which appeared to be due to myofacial pain. On December 11, 1997 Dr. Brown recommended that plaintiff go to a pain clinic for nerve blocks before he would assess whether she was a candidate for fusion surgery.
4. No medical reports for further follow up treatment were submitted by the parties until the report for plaintiff's first office visit with Dr. Brennan on August 6, 1999. Plaintiff told Dr. Brennan on that occasion that Dr. Brown had diagnosed her with fibromyalgia as well as with degenerative disc disease but there was no such finding in Dr. Brown's medical reports of record. She further advised that she had been treated at a pain clinic and had undergone several nerve blocks. On examination, Dr. Brennan found multiple trigger points in her neck and back *Page 4 
consistent with a diagnosis of fibromyalgia, and he began treating her for that condition, as well as for degenerative joint disease involving her back.
5. Plaintiff went for a period without medical treatment due to lack of health insurance coverage, but otherwise received treatment from Dr. Brennan for fibromyalgia until September 2003. Plaintiff's symptoms were documented to be muscular-type pain in her neck, shoulders and back in June 2003. Her back pain was sometimes a problem at work, since she had to lift some heavy items, and her supervisor tried to ease her workload at those times.
6. Three days after the fall at work on February 8, 2004, plaintiff went to Ms. Stark and advised that she had hurt her tailbone when she had fallen. She requested medical care at that time. Ms. Stark called the claim into defendant's workers' compensation department and sent plaintiff to Doctors' Urgent Care. The provider there noted that plaintiff's feet had gone out from under her when she had fallen, that she grabbed the sink, that she had an abrasion on her left arm, that her sacral area was tender but her coccyx was not, and that her back and legs hurt down to the knee. Plaintiff was treated with medication and was given work restrictions.
7. During the next month, plaintiff was treated by several providers at the clinic for persistent low back pain and left leg pain. Dr. Cromer ordered physical therapy. On March 2, 2004, the physical therapist conducted an initial evaluation in which plaintiff was noted to complain of a burning sensation in her lower extremity, low back pain, and pain in her buttocks, shoulders and neck. Dr. Cromer also noted on March 25, 2004 that plaintiff was complaining of upper back pain, with numbness in her hands if she lifted them over her chest.
8. Due to plaintiff's lack of response to medical treatment, Dr. Cromer subsequently referred plaintiff to Dr. Azzato, an orthopedic surgeon. When Dr. Azzato examined plaintiff on April 15, 2004, she was tearful and complaining of pain seemingly everywhere, even to light *Page 5 
touch. There were no focal abnormalities on examination. Dr. Azzato injected trigger points in her sacroiliac joint and trochanteric bursa and ordered an MRI of her lumbar spine. The MRI revealed degenerative disc disease with asymmetrical bulging at L5-S1, but there was no evidence of a ruptured disc or nerve root impingement.
9. On June 3, 2004 plaintiff returned to Dr. Azzato and reported that the trigger point injections had helped her for two weeks but that her symptoms had returned. Dr. Azzato reviewed the MRI and concluded that plaintiff did not have a surgical lesion. Dr. Azzato referred plaintiff to the Center for Pain Management and her family doctor for follow-up care. He also released plaintiff to return to work at light duty.
10. Although plaintiff's supervisor was present and saw her fall, and although plaintiff's doctors had either kept her out of work or given her restrictions which exceeded her job requirements since February 11, 2004 when plaintiff first received medical treatment, defendant did not admit or deny liability for the claim. The company paid for her medical treatment but did not begin paying compensation to her for temporary total disability until the end of April or the first of May. Defendant did not file a Form 60 nor a Form 63 with the Industrial Commission.
11. Despite the fact that Dr. Azzato recommended pain management when he last saw plaintiff, defendant would not authorize further treatment for approximately 15 months. A nurse case manager was eventually assigned to the claim, and she made arrangements for plaintiff to be evaluated by Dr. Ligouri at Coastal Rehabilitation Medicine Associates on September 16, 2005. By that date, plaintiff had started using a cane and, in Dr. Liguori's opinion, had developed pain behaviors that indicated to him that plaintiff was probably exaggerating her pain and impairment *Page 6 
to some degree. Dr. Liguori's initial impression was that plaintiff's symptoms were coming from her sacroiliac joint, so he ordered physical therapy and a sacroiliac joint injection.
12. Plaintiff reported little benefit from the treatment when she saw Dr. Liguori on November 16, 2005. There was a communication problem between her and the doctor that day, and Dr. Liguori refused to see her again. Consequently, his partner Dr. Boylan assumed plaintiff's care. Dr. Boylan examined plaintiff on December 7, 2005. Plaintiff was still complaining of low back and left leg pain at that time and also indicated that her leg was sometimes dragging. In addition, she reported left shoulder pain, which at times went up to her neck and down to her elbow. Dr. Boylan ordered an MRI of her shoulder and an EMG of her lower extremities to determine if there was evidence of radiculopathy. The EMG proved to be normal. Defendant would not authorize the MRI since it had not accepted liability for the left shoulder problem.
13. Dr. Boylan prescribed medication for plaintiff and ordered an epidural steroid injection. However, no treatment modalities gave plaintiff any relief from her back and leg pain. Dr. Boylan did not think plaintiff was a surgical candidate. As of June 5, 2005 Dr. Boylan had no further treatment options to offer for plaintiff's back. Dr. Boylan thought that plaintiff would need a functional capacity evaluation to determine plaintiff's permanent restrictions. Dr. Boylan thought that plaintiff's left shoulder symptoms were due to the fall at work and that they needed to be addressed before he released her.
14. The parties deposed Dr. Boylan in May 2006, and he testified regarding his opinion as to the causal relationship between the reported shoulder symptoms and the fall at work. Defendant then agreed to provide the MRI Dr. Boylan had ordered. The June 8, 2006 MRI revealed tendinopathy or chronic irritation of the supraspinatus tendon, some arthritic *Page 7 
changes in the AC joint and a cyst or echondroma on the humeral head, but there was no evidence of a rotator cuff tear. In July, Dr. Boylan injected the subachromial space and ordered more physical therapy.
15. At the last appointment with Dr. Boylan on September 6, 2006, plaintiff indicated that she had received short-term relief from the injection and that the physical therapy had not helped her much. Dr. Boylan thought plaintiff should have an orthopedic evaluation of her shoulder but noted that plaintiff had reached maximum medical improvement with regard to her back with a ten percent permanent partial impairment. Dr. Boylan restricted plaintiff from lifting more than ten pounds.
16. Defendant would not authorize the orthopedic shoulder evaluation recommended by Dr. Boylan in that defendant continued to contest its liability for that condition.
17. Defendant prepared a job description listing various tasks, including operating the cash register, working as a hostess, doing light food preparation, and auditing tickets to make sure the food on the plates matched the items for which the customers would be charged. When Dr. Liguori saw plaintiff in December 2005, Dr. Liguori approved of plaintiff doing only the ticket-auditing task on a part-time basis. It was clear that plaintiff was capable of performing this task at all times after that date, but there was no evidence that defendant offered such a position to plaintiff until August 2006. By letter dated August 1, 2006, plaintiff was advised of the ticket-auditing position being available and that she was expected to report to work on August 11, 2006. Plaintiff did not report for work as scheduled and did not call her employer to advise that she would not be reporting for work.
18. Defendant then filed a Form 24 request to stop payment with the Industrial Commission. By Administrative Decision and Order filed October 13, 2006, the Form 24 was *Page 8 
approved but defendant was only allowed to suspend payment of compensation for the period from September 1, 2006, when the Form was filed, through September 18, 2006. The ticket-auditor job was not considered to be suitable work after September 18, 2006. Plaintiff then filed a Form 33 request for hearing which appealed the administrative decision and which requested that the Commission order defendant to provide treatment for plaintiff's left shoulder complaints.
19. On February 8, 2004 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. The fact that she slipped and fell constituted an unusual occurrence that interrupted her regular work routine. Plaintiff aggravated her pre-existing back condition as a result of the accident. Defendant subsequently paid workers' compensation benefits for the injury except that defendant denied liability for benefits arising from plaintiff's left shoulder condition.
20. Although plaintiff did report an abrasion to her left arm on February 11, 2004, although she completed a Form 18 showing a left shoulder injury, and although she reported a left shoulder injury to Dr. Azzato, plaintiff's claim that she sustained more than a temporary, transient injury to her left arm and shoulder as a result of the fall, has not been accepted as factual. Neither the doctors at Doctors' Urgent Care nor Dr. Azzato found evidence of a focal shoulder injury. In April when plaintiff saw Dr. Azzato, her complaints of shoulder pain appeared to be more related to the general body pain associated with her pre-existing fibromyalgia. Dr. Azzato saw plaintiff in the months immediately following the injury. As an orthopedic surgeon, Dr. Azzato would be best qualified to identify a shoulder problem, yet he did not find any evidence of injury to the joint which warranted diagnostic testing or treatment.
21. Dr. Boylan related plaintiff's shoulder problem with plaintiff's fall at work. However, Dr. Boylan did not see plaintiff until almost two years after the injury. Dr. Boylan *Page 9 
relied on what plaintiff told him in reaching the opinion that there was a causal relationship. The history plaintiff gave Dr. Boylan was not factually accurate. Dr. Boylan admitted that the MRI findings could not be attributed to the injury. Rather, the findings indicated degenerative and arthritic conditions. Therefore, the undersigned give greater weight to the opinions of Dr. Azzato due to the fact that Dr. Azzato saw plaintiff in 2004 and is an orthopedic surgeon.
22. The greater weight of the medical evidence does not establish a causal relationship between plaintiff's left shoulder complaints on and after April 15, 2004 and plaintiff's fall at work.
23. As of August 11, 2006, defendant offered suitable employment to plaintiff which was within her capacity. Plaintiff was capable of performing work which did not require lifting, pushing or pulling more than ten pounds. The ticket-auditor position was well within those restrictions. Plaintiff refused the job without justification at that time. However, plaintiff reached maximum medical improvement with respect to her compensable back condition as of September 6, 2006. The ticket-auditor job was not available to the general public. It was a task normally performed by employees who had other primary duties. Furthermore, it was a task that did not need to be performed on a regular and consistent basis. Since plaintiff had reached the end of the healing period, a rehabilitative job was no longer suitable for her.
24. Plaintiff's regular job duties as a cook and waitress were not described in much detail. The evidence did not clearly reveal whether those duties involved lifting more than ten pounds. However, there was evidence that she had to lift tubs of batter and boxes of eggs.
25. As of September 6, 2006, plaintiff was capable of performing work that did not involve lifting more than ten pounds. Despite the lack of further restrictions, she considered herself to be much more impaired than her treating physicians did and did not believe that she *Page 10 
was capable of standing for long periods of time. There was no evidence that plaintiff made any effort to find other employment. Defendant had also not provided plaintiff with vocational placement assistance.
26. The evidence does not establish that plaintiff was unable to work in any capacity due to her injury while employed with defendant after September 6, 2006; nor did plaintiff prove that it would have been futile for her to look for work within her restrictions after that date. Since plaintiff did not believe that she could do her former job with defendant and since she had refused the light duty position offered by defendant, it was not reasonable for plaintiff to fail to look for other employment.
27. Plaintiff sustained a ten percent permanent partial impairment to her back as a result of the injury by accident giving rise to this claim.
28. Defendant was directed at the hearing before the deputy commissioner to show cause as to why sanctions should not be assessed for its failure to file a Form 60 or a Form 63 on a timely basis in this case. The undersigned find that defendant's failure to file a Form 60 was not prejudicial or detrimental to plaintiff.
29. This claim was defended with reasonable grounds.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 8, 2004, plaintiff sustained an injury by accident to her back arising out of and in the course of her employment with defendant. However, plaintiff's left shoulder complaints for which she was treated after April 2004 were not proven by the greater weight of *Page 11 
the credible evidence to have been a proximate result of plaintiff's injury by accident. N.C. Gen. Stat. § 97-2 (6); Click v. Pilot FreightCarriers, Inc., 300 N.C. 164 (1980).
2. Plaintiff is entitled to temporary total disability compensation until August 11, 2006 when defendant provided plaintiff work of a rehabilitative nature, which was suitable to plaintiff's capacity. N.C. Gen. Stat. § 97-29.
3. Due to plaintiff's unjustified refusal of the position offered by defendant, defendant was entitled to suspend payment of compensation as of August 11, 2006. N.C. Gen. Stat. § 97-32.
4. As the job offered by defendant was not generally available in the marketplace, it was not an indication of plaintiff's wage earning capacity after reaching maximum medical improvement. Peoples v. ConeMills Corp, 316 N.C. 426 (1986).
5. Temporary total disability ends when a claimant reaches maximum medical improvement. Moretz v. Richards and Associates, Inc.,316 N.C. 539 (1986); Franklin v. Broyhill Furniture Industries,123 N.C. App. 200
(1996).
6. Plaintiff has failed to meet her burden of proving the nature and extent of her disability. Plaintiff did not make any effort to find suitable employment after she reached maximum medical improvement on September 6, 2006, did not prove that she was incapable of working in any employment or that it would be futile to her to look for any employment, and did not prove actual wage earning disability after September 6, 2006. N.C. Gen. Stat. §§ 97-29; 97-30; Hilliard v. ApexCabinet Company, 305 N.C. 593 (1982); Russell v. Lowe's ProductsDistribution, 108 N.C. App. 762 (1993)
7. Plaintiff is entitled to compensation at the rate of $132.52 per week for 30 weeks for the ten percent permanent partial disability plaintiff sustained to her back, subject to a credit *Page 12 
in favor of defendant for any compensation paid after August 10, 2006. N.C. Gen. Stat. §§ 97-31 (23); 97-42.
8. Plaintiff is entitled to have defendants provide all medical compensation related to her back arising from her injury by accident reasonably required to effect a cure, provide relief, or lessen plaintiff's period of disability. However, since plaintiff's left shoulder complaints were not proven to have been a proximate result of the injury at work, plaintiff is not entitled to have defendant provide treatment for her shoulder complaints. N.C. Gen. Stat. §§ 97-2(19);97-25.
9. Plaintiff is not entitled to have attorney's fees assessed against defendant since the claim was defended with reasonable grounds. N.C. Gen. Stat. § 97-88.1.
10. In the discretion of the undersigned, the Full Commission hereby waives any sanctions against defendant for its failure to file a Form 60 or Form 63 on a timely basis. N.C. Gen. Stat. § 97-18; Rules 103 and 802, Workers' Compensation Rules of the North Carolina Industrial Commission.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits for her left shoulder complaints is DENIED.
2. Defendant shall pay compensation to plaintiff at the rate of $132.52 week for thirty (30) weeks for her permanent partial disability to her back, subject to a credit for compensation paid after August 10, 2006. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fee hereinafter approved. *Page 13 
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of her fall, but defendant is not liable for treatment for plaintiff's left shoulder complaints, except to the extent authorized.
4. An attorney's fee in the amount of twenty-five percent of the compensation awarded is hereby approved for plaintiff's counsel, which shall be deducted from the aforesaid award and paid directly to plaintiff's counsel
5. In the discretion of the undersigned, the Full Commission hereby waives any sanctions against defendant for its failure to file a Form 60 or Form 63 on a timely basis.
6. Defendant shall pay the costs.
This the 14th day of January, 2008.
 S/
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
 S/ DIANNE C. SELLERS COMMISSIONER
 S/ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1